UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GILEAD SCIENCES, INC.,

        Plaintiff,

v.

BIO-GENETIC VENTURES, INC., et al.,

        Defendants.

CASE NO. C06-1416JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on motions for summary judgment from Defendants Dave Syferd and Partners, Inc. ("Syferd") (Dkt. # 23)[1], the United States (Dkt. # 52), and a joint motion from Bio-Genetic Ventures, Inc. ("Bio-Genetic") and BGV Holdings, LLC ("BGV") (Dkt. # 45). Although the parties have requested oral argument, the court finds this matter appropriate for disposition on the papers. Having reviewed the motions and all documents filed in support and opposition, the court GRANTS Syferd's motion (Dkt. # 23), GRANTS the United States' motion (Dkt. # 52),

---

[1] Although Syferd captions its pleading as a "Motion to Disburse Funds," the court construes it as a motion for summary judgment.

ORDER – 1

and DENIES the motion from Bio-Genetic and BGV (Dkt. # 45).  The court denies as moot the United States' motion for leave to file opposition nunc pro tunc (Dkt. # 64).

## II.  BACKGROUND

This is an interpleader action arising from the buyout by Plaintiff Gilead Sciences, Inc. ("Gilead") of Corus Pharma, Inc. ("Corus") and anticipated payment to Corus' shareholders.  Under the terms of an August 11, 2006 merger agreement, Gilead is obligated to exchange $467,009.31 for 301,851 shares of Corus common stock, represented by Corus Certificate No. 48 ("Certificate 48").  See Am. Compl. ¶ 12.  Gilead alleges that it may be exposed to multiple liability for the payment of this sum because Defendants Bio-Genetic, BGV, Syferd, and the United States claim conflicting interests in the $467,009.31.  Id. at ¶ 17.

Gilead originally filed suit in the King County Superior Court and deposited the $467,009.31 stake with the state court's registry.  The United States removed the action to this court on September 28, 2006,[2] and thereafter effectuated the transfer and deposit of the stake to this court's registry.  The facts giving rise to the interpleader funds are not in dispute.

**A.    Corus Certificate 48**

Prior to Gilead's acquisition of Corus, on January 9, 2002, Corus and Bio-Genetic entered into a letter agreement providing that Bio-Genetic would receive shares of Corus stock and cash, in exchange for assisting Corus in acquiring intellectual property related to the drug Lidocaine.  Pitman Decl. ¶ 3, Ex. B ("January 2002 Letter Agreement") (Dkt. # 54).  Shortly thereafter, Bio-Genetic created BGV to hold the benefits Bio-Genetic

---

[2]Because the United States asserts a federal tax lien on the interpleader funds, see 28 U.S.C. § 2410(a)(5), it properly removed the action under 28 U.S.C. § 1444, which provides that any state court action brought under 28 U.S.C. § 2410 against the Unites States may be removed to federal court.

ORDER – 2

expected to receive as a result of the January 2002 Letter Agreement. Allison Decl. ¶ 3, Ex. 2 (Dkt. # 46). Bio-Genetic and BGV then engaged in a transaction whereby all of Bio-Genetic's shareholders – with one exception – exchanged their shares in Bio-Genetic for an equal number of shares in BGV. Id. at ¶ 3; Pitman Decl. ¶ 5, Ex. D at 2 (Allison Dep. at 30-31). Bio-Genetic assigned its interest in the January 2002 Letter Agreement, including the right to receive shares of Corus stock, to BGV. Id. The only shareholder who did not relinquish his shares in Bio-Genetic was Peter Allison, who became the sole owner and President of Bio-Genetic. Id.

In January 2002, Corus issued Certificate No. 38 ("Certificate 38"), which transferred 25,483 shares of Corus common stock to BGV. Allison Decl., Ex. 3 at 1. On September 12, 2002, Corus issued Certificate No. 39 ("Certificate 39"), which transferred an additional 75,000 shares of Corus common stock to BGV. Id. at 2.

Also on September 12, 2002, Corus and Bio-Genetic, entered into a contract captioned "Settlement Agreement & General Release." Pitman Decl. ¶ 2, Ex. A ("Settlement Agreement"). The Settlement Agreement explicitly terminated the January 2002 Letter Agreement and contained an integration clause noting that the Settlement Agreement superceded all prior agreements between the parties. Id. In addition, the Settlement Agreement provided that if certain prerequisites occurred, Corus would transfer 301,851 shares of Corus common stock to Bio-Genetic:

> No later than thirty (30) days following the filing by Corus of its first Investigatory New Drug Application ("IND") for the use of Lidocaine in treating asthma, Corus shall issue to [Bio-Genetic] 301,851 shares of Corus common stock . . . .

Id. Following the occurrence of this condition, Corus transferred the 301,851 shares to Bio-Genetic in a "Stock Purchase Agreement" dated March 31, 2003. The Stock Purchase Agreement referred to Bio-Genetic as the entity receiving the shares:

ORDER – 3

> [Bio-Genetic] hereby purchases, and [Corus] hereby sells to [Bio-Genetic], Three Hundred One Thousand Eight Hundred Fifty One (301,851) shares of [Corus's] common stock (the "Shares") pursuant to Section 3(a) of the [Settlement Agreement].

Allison Decl. ¶ 2, Ex. 1.  Corus then issued Certificate 48, which provides:

> This certifies that BioGenetic Ventures, Inc. is the holder of [301,851] shares of the common stock [of Corus]. This certificate and the shares it represents are registered and transferable only on the stock transfer books of [Corus] pursuant to authorization or document transfer made by the holder of this certificate.

Id. at ¶ 3, Ex. 3 at 3.

Bio-Genetic disclaims any interest in Gilead's payment for the shares represented by Certificate 48, and asserts, pursuant to Bio-Genetic's assignment of rights to receive Corus shares, that BGV was the true owner of Certificate 48.  Mr. Allison, who signed the Stock Purchase Agreement as President of Bio-Genetic, avers that he mistakenly signed the document, and that he did not have the authority to purchase stocks for any entity other than BGV.  See Allison Decl. ¶ 2.

**B.     State Court Judgment Awarding Corus Stock to Syferd**

Syferd asserts entitlement to $309,430.34 of the interpleader funds on the basis of a judgment obtained against Bio-Genetic arising from litigation that took place in 2004 in King County Superior Court.  Following trial, Syferd and Bio-Genetic entered into a stipulation whereby Bio-Genetic pledged 200,000 shares of Corus stock represented by Certificate 48 as security for the payment of a monetary settlement.  Dembowski Decl. ¶ 2 (Dkt. # 24).  Bio-Genetic failed to make the promised settlement payments, and on February 14, 2005, the Superior Court awarded the 200,000 shares of Corus stock to Syferd in an order enforcing the stipulation.  See Dembowski Reply Decl. ¶ 2, Ex. 1 (Dkt. # 31) ("Superior Court Order").  The Superior Court Order directed that "[w]ithin five days of entry of this Order, Judgment Debtor [Bio-Genetic ], Peter Allison, or the related Peter Allison entity or agent (including counsel) which holds Corus Pharma, Inc.

ORDER – 4

common stock certificate No. 048 shall tender it to" Syferd.  Id. at 2.  Alternatively, the Superior Court Order directed Corus to cancel Certificate 48, issue 200,000 shares to Syferd, and issue the remaining 101,851 shares to Bio-Genetic.  Id.  Neither Bio-Genetic, Mr. Allison, nor any related entity complied with the Superior Court order.  Dembowski Decl. ¶ 3.  The Washington Court of Appeals dismissed Bio-Genetic's appeal of the Superior Court Order on December 9, 2005.  See Syferd Answer, Ex. 2 (Dkt. # 14).

**C.     Bankruptcy Court Proceedings**

Shortly after the Superior Court issued its Order, on February 25, 2005, Bio-Genetic filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Eastern District of Washington.  BGV brought an adversarial complaint in the proceeding against Syferd and Corus seeking cancellation of Certificate 48 and a determination that BGV – not Bio-Genetic – owned the Corus shares represented by Certificate 48.  Dembowski Decl., Ex. 1 at 2 (Findings of Fact and Conclusions of Law).  The bankruptcy court found that BGV's commencement of the adversarial proceeding constituted an attack on the Superior Court Order, which was then still subject to a pending appeal.  Id.  The bankruptcy court further found that by commencing the adversary proceeding, BGV had engaged in forum shopping by seeking a determination of issues raised in a state court proceeding.  Id.  The bankruptcy court dismissed BGV's adversarial complaint, citing principles of abstention, res judiciata, and collateral estoppel.  Id.   In regard to the underlying Chapter 11 proceeding, the bankruptcy court ultimately dismissed the action, holding that Bio-Genetic did not have any assets or business to conduct.  Smith Decl., Exs. 4-6 (Dkt. # 47).  The bankruptcy court issued sanctions against Bio-Genetic and its attorneys for seeking Chapter 11 protection in bad faith.  Id.

ORDER – 5

### D. IRS Liens Against Bio-Genetic

The United States asserts, and Bio-Genetic does not dispute, that Bio-Genetic failed to properly pay its employment taxes beginning in the first quarter of 2001 through 2005. The United States, through the Internal Revenue Service ("IRS"), assessed outstanding taxes against Bio-Genetic for the March, June, September, and December 2001 periods on August 2, 2004; for the June, September, and December 2002 periods on April 28, 2003; for the March 2003 period on June 16, 2003; for the June 2003 period on September 15, 2003; and for the September 2003 period on August 9, 2004. Pitman Decl., Ex. G at 1 (Dkt. # 61). The IRS recorded a federal tax lien for these assessments on August 27, 2004, totaling $ 92,492.53. Id. The IRS assessed additional taxes against Bio-Genetic for the June 2004 period on August 23, 2004; for the September 2004 period on November 29, 2004; for the December 2004 period on April 11, 2005; for the March 2005 period on July 4, 2005; and for the June 2005 period on August 22, 2005. Id. at 2. The IRS recorded a second federal tax lien for these liabilities on November 21, 2005, totaling $ 24,530.70. Id. These liens appear to establish an outstanding tax liability in the amount of $117,023.23.

The United States contends that Certificate 48 is subject to the IRS liens against Bio-Genetic's property, and thus seeks to apply the interpleader funds to Bio-Genetic's tax liabilities. In disclaiming any ownership interest in the stake, Bio-Genetic contends that the interpleader funds are not subject to the liens.

### E. Gilead's Acquisition of Corus

On August 11, 2006, Gilead acquired Corus. Am. Compl. ¶ 12. According to Gilead, the terms of the merger agreement obligated Gilead to exchange $467,009.31 for Bio-Genetic Ventures' 301,851 shares of Corus stock represented by Certificate 48. Id. On August 10, 2006, Gilead received documentation reflecting Bio-Genetic's tax

ORDER – 6

liabilities, and thereafter, documentation of the Superior Court Order entitling Syferd to proceeds of 200,000 shares represented by Certificate 48. Id. at ¶ 14. On September 12, 2006, Gilead received notice that BGV asserted a claim as the true owner of the 301,851 shares. Id. at ¶ 15. Faced with these conflicting claims, Gilead commenced the present action. Defendants now move for summary judgment concerning their respective rights to the interpleader funds.

### III.  ANALYSIS

As a general principle, an interpleader action enables a plaintiff stakeholder to sue all parties asserting adverse or conflicting claims to a common fund and allows the claimants to litigate who is entitled to the funds. See Cripps v. Life Ins. Co. of N. America, 980 F.2d 1261, 1265 (9th Cir. 1992). "Interpleader's primary purpose is not to compensate, but rather to protect stakeholders from multiple liability as well as from the expense of multiple litigation." Aetna Life Ins. Co. v. Bayona, 223 F.3d 1030, 1034 (9th Cir. 2000) (citations omitted). The court's function is determine the respective rights of the claimants. See Texaco, Inc. v. Ponsoldt, 118 F.3d 1367, 1369 (9th Cir. 1997). This determination can be made by summary judgment with respect to any claimant where there are no genuine issues of material fact. See Rhoades v. Casey, 196 F.3d 592, 600-01 (5th Cir. 1999).

In examining Defendants' motions, summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no material factual dispute and he or she is entitled to prevail as a matter of law. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by producing evidence that

ORDER – 7

negates an essential element of the non-moving party's case, or (2) after suitable discovery, by showing that the non-moving party does not have enough evidence of an essential element to carry its burden of persuasion at trial. Id. at 322-23; see also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party meets its burden, the opposing party must present evidence to support its claim or defense. Cline v. Indust. Maint. Eng'g. & Contracting Co., 200 F.3d 1223, 1229 (9th Cir. 2000). For purely legal questions, summary judgment is appropriate without deference to the non-moving party.

**A.    Defendants' Respective Rights to the Interpleader Funds**

Because the interpleader funds constitute Gilead's payment for the acquisition of Corus shares represented by Certificate 48, the court determines Defendants' respective rights by evaluating their relative interests in Certificate 48.

**1.    Defendant Syferd's Interest in Certificate 48**

As described above, Syferd's claim is based on the Superior Court Order awarding Syferd proceeds from 200,000 shares represented by Certificate 48. In their answers to the amended complaint, BGV and Bio-Genetic do not dispute that Syferd is entitled to these proceeds, totaling $309,430.34. See Bio-Genetic Answer ¶ 14 (Dkt. # 17); BGV Answer ¶ 14 (Dkt. # 16).[3] Likewise, the United States also does not dispute the validity of Syferd's claim. See United States' Mot. at 4, 7 (Dkt. # 52) (describing "undisputed fact" that the King County Superior Court awarded Syferd 200,000 shares – or the proceeds therefrom – represented by Certificate 48 in an order dated February 14,

---

[3]BGV seeks payment only for the Corus shares that were not awarded to Syferd by the state court. See BGV Answer (Dkt. # 16).

ORDER – 8

2005).[4]  It appearing that no dispute exists as to Syferd's interest in the funds, the court holds that Syferd is entitled to the proceeds of 200,000 shares, or $309,430.34.

### 2. Defendant United States' Interest in Certificate 48

The United States' claim is based on federal tax liens arising from Bio-Genetic's failure to pay employment taxes beginning in 2001 through 2005.  Bio-Genetic does not dispute its tax liabilities.  See Allison Decl. ¶ 5.  Rather, Bio-Genetic and BGV assert that the proceeds of Gilead's acquisition (or at least what remains after Syferd receives its share) belong exclusively to BGV, and thus are not subject to the IRS liens.  At issue is therefore whether the federal tax liens against Bio-Genetic attach to Certificate 48.

Under 26 U.S.C. §§ 6321, and 6322, when a taxpayer refuses or neglects to pay an assessed tax after receiving a demand for payment, a lien in favor of the United States arises "upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321.  The broad language of this statute evinces Congressional intent that a federal tax lien reach every interest in property that a taxpayer might have.  See Drye v. United States, 528 U.S. 49, 56 (1999) (quotation and citation omitted).  In order to evaluate a taxpayer's ownership interest, federal courts "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as property or rights to property within the compass of the federal tax lien legislation." Id. at 58 (quotation omitted).

---

[4]Although the United States argues that its claim to the interpleader funds is superior to Syferd's claim, the court does not reach this contention.  Because there are adequate funds to satisfy the claims of both Syferd and the United States, the court need not evaluate their relative priority.  The court thus denies as moot the United States' nunc pro tunc motion for leave to file opposition to Syferd's claim, wherein the United States advances such an argument.

ORDER – 9

At the threshold, the court observes that Certificate 48 explicitly identifies "Bio-Genetic Ventures, Inc." as the holder of the Corus shares. See Allison Decl. ¶ 3, Ex. 3 at 3. The agreements entered into by Corus and Bio-Genetic are consistent with the terms of Certificate 48. The September 2002 Settlement Agreement stated that, dependant on certain conditions, Corus would transfer 301,851 shares of Corus common stock to Bio-Genetic. Pitman Decl., Ex. A. The Settlement Agreement is signed by Mr. Allison, in his capacity as President of Bio-Genetic. Id. The March 31, 2003 Stock Purchase Agreement obligated Corus to then transfer the 301,851 shares to Bio-Genetic. Allison Decl. ¶ 2, Ex. 1. Neither the September 2002 Settlement Agreement, nor the March 31, 2003 Stock Purchase Agreement refer to BGV. Accordingly, Corus issued Certificate 48 in the name of Bio-Genetic. The plain language of these agreements, and the face of Certificate 48 itself, establish that Bio-Genetic owned Certificate 48. See Hearst Commc'n, Inc. v. Seattle Times Co., 115 P.3d 262, 267 (Wash. 2005) (recognizing that under Washington law, courts determine the meaning of a contract from its plain language); see also RCW § 62A.8-207 (providing that, until receiving a proper request to transfer, the issuer of a security is entitled to "treat the registered owner as the person exclusively entitled . . . to exercise all the rights and powers of an owner.").[5]

The arguments of Bio-Genetic and BGV are insufficient to raise a genuine issue as to BGV's purported ownership of Certificate 48. BGV and Bio-Genetic contend that the sole purpose of BGV's creation was to hold, for its investors, the proceeds of Bio-Genetic's contract with Corus. Even assuming, as Mr. Allison avers, that Bio-Genetic

---

[5]In addition, the court observes that Bio-Genetic's pledge of 200,000 shares represented by Certificate 48 as security for the settlement of the King County Superior Court lawsuit (to which BGV was not a party) evidences Bio-Genetic's treatment of Certificate 48 as if it were its own. It further appears that Certificate 48 was in Bio-Genetic's possession in 2005 when Mr. Allison produced it on behalf of Bio-Genetic pursuant to an IRS request for Bio-Genetic's property. Pitman Decl. ¶¶ 6, 9, Ex. E (Allison Dep. at 100-06).

ORDER – 10

assigned to BGV all of Bio-Genetic's rights to receive Corus shares under the January 2002 Letter Agreement, see Allison Decl. ¶ 3, Ex. 2, a later agreement – the September 2002 Settlement Agreement – explicitly terminated the January 2002 Letter Agreement. See Pitman Decl., Ex. A at 2 ("The [January 2002] Letter Agreement is hereby terminated in its entirety, and shall have no further force or effect . . . ."). Accordingly, the fact that Corus issued Certificates 38 and 39 in the name of BGV does not directly bear on the ownership of Certificate 48 because Certificates 38 and 39 were issued under the January 2002 Letter Agreement, *before* that Agreement's termination per the September 2002 Settlement Agreement. Mr. Allison's contention that he mistakenly signed the Stock Purchase Agreement on behalf of Bio-Genetic, see Allison Decl. ¶ 2, is likewise insufficient to create a genuine issue for trial. See Michak v. Transnation Title Ins. Co., 64 P.3d 22, 27-28 (Wash. 2003) ("It is a general rule that a party to a contract which he has voluntarily signed will not be heard to declare that he did not read it, or was ignorant of its contents.") (quotation and citation omitted); Hearst Commc'n, 115 P.3d at 267 ("When interpreting contracts, the subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used.") (citation omitted).[6] The Stock Purchase Agreement unequivocally obligated Corus to sell, and Bio-Genetic to purchase, 301,851 shares of Corus common stock; pursuant to that agreement, Corus issued Certificate 48 in the name of Bio-Genetic.

The court likewise finds unavailing Bio-Genetic's and BGV's assertion that collateral estoppel precludes any argument concerning Bio-Genetic's ownership of Certificate 48 given the bankruptcy court's purported ruling to the contrary. Specifically,

---

[6] Although there are exceptions to this general rule, including a party's lack of opportunity to read a contract, fraud, deceit, or coercion, see Yakima County (W.Valley) Fire Prot. Dist. No. 12 v. City of Yakima, 858 P.2d 245, 255 (Wash. 1993), Mr. Allison asserts no such defenses.

ORDER – 11

Bio-Genetic and BGV rely on the bankruptcy court's findings of fact and conclusions of law in the adversarial proceeding, which provide that Bio-Genetic holds Certificate 48 "only as a stakeholder, but has no beneficial interest in the Corus stock." See Dembowski Decl., Ex. 1 at 2 (Findings of Fact and Conclusions of Law).[7]

The doctrine of collateral estoppel, also known as issue preclusion, "promotes judicial economy and protects parties from the burden of successive litigation by barring the relitigation of issues in certain circumstances." Maciel v. Comm'r of Internal Revenue, 489 F.3d 1018, 1023 (9th Cir. 2007) (citation omitted). Collateral estoppel applies only where "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding." Hydronautics v. FilmTec Corp., 204 F.3d 880, 885 (9th Cir. 2000). Here, the bankruptcy court's ruling does not have a preclusive effect because the United States was not a party or in privity with any party before the bankruptcy court, and because the bankruptcy court did not address the ownership of Certificate 48 on its merits.

It is undisputed that the United States never entered an appearance, asserted any claim, filed any pleadings, or advocated any position in the Chapter 11 or related adversarial proceedings in the bankruptcy court. Nonetheless, Bio-Genetic and BGV argue that the bankruptcy court's findings are preclusive here because the United States received notice of the bankruptcy proceeding and had an opportunity to intervene. The fact that the United States had an opportunity to intervene, however, is insufficient to

---

[7]Bio-Genetic and BGV additionally rely on the bankruptcy court's ultimate dismissal of Bio-Genetic's Chapter 11 proceedings on the basis that Bio-Genetic held no real assets. See Smith Decl., Ex. 4-6.

ORDER – 12

establish that it was a party in interest to the bankruptcy proceedings for purposes of collateral estoppel. See Kourtis v. Cameron, 419 F.3d 989, 998-99 (9th Cir. 2005) (holding that the fact that plaintiffs were aware of prior litigation and failed to intervene did not expose the plaintiffs to the earlier proceedings' preclusive effects) (citing Martin v. Wilks, 490 U.S. 755, 765 (1989) ("Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree.")).

Moreover, the United States was not in privity with any party before the bankruptcy court. In the context of collateral estoppel, privity "is a legal conclusion designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject mater involved." Headwaters, Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1053 (9th Cir. 2005) (quotation omitted). Here, the United States seeks to demonstrate that Bio-Genetic owns Certificate 48, while, as described below, three of the four parties before the bankruptcy court took the opposite position, while the fourth took no position on this question.

The court is also not persuaded that the merits of the ownership of Certificate 48 were litigated before the bankruptcy court. Courts are generally hesitant to hold that stipulated judgments have a preclusive effect. See id. at 1052 n.4 ("[O]nly a judgment that 'actually passes directly on the substance of a particular claim before the court . . . triggers the doctrine of res judicata or claim preclusion.'") (quoting Semtek Intern. Inc. v. Lockheed Martin Corp., 531 U.S. 497, 201-02 (2001)). The bankruptcy court's findings explicitly state that "Bio-Genetic, Syferd, and BGV . . . have represented to the court that Bio-Genetic does not have any interest in the 301,851 shares of stock represented by Corus Certificate No. 048. Corus takes no position on this issue." Dembowski Decl.,

ORDER – 13

Ex. 1 at 1.  Under the present circumstances, the uncontested representation of Bio-Genetic, BGV, and Syferd does not render the bankruptcy proceedings preclusive.

The court concludes that Bio-Genetic owned Certificate 48, and thus, the United States is entitled to apply the interpleader funds to Bio-Genetic's outstanding tax liabilities.  The evidence submitted by the United States appears to establish a federal tax lien against Bio-Genetic in the amount of $92,492.53 recorded on August 27, 2004, and a lien in the amount of $24,530.70 recorded on November 21, 2005, totaling $117,023.23.  See Pitman Decl., Ex. G.  In its motion, however, the United States asserts that Bio-Genetic's tax liabilities total $114,023.26.  See Mot. at 8 (Dkt. # 52).  The source of this discrepancy is unclear.  As set forth below, the court directs the United States to submit a motion for a proposed order stating the principal amount of tax liability (thus addressing this discrepancy), any interest or penalties, and the basis for such request.

### 3. The Interests of Defendants Bio-Genetic and BGV in Certificate 48

As set forth above, the court concludes that Bio-Genetic owned Certificate 48, and thus denies the motion of Bio-Genetic and BGV to the extent that it seeks an order establishing BGV's ownership of Certificate 48.  The court likewise rejects BGV and Bio-Genetic's suggestion that, should the court conclude that the federal tax lien attaches to Certificate 48, the lien should only attach to the 200,000 shares awarded to Syferd.  Bio-Genetic and BGV provide no factual or legal basis for the proposition that Syferd's recovery, rather than Bio-Genetic's, should be encumbered by liens against Bio-Genetic.  Accordingly, the court holds that Bio-Genetic is entitled to the remainder of the stake only after the full satisfaction of the United States' and Syferd's claims.

## B. Gilead's Request for Dismissal From the Action

At the April 16, 2007 hearing in this matter, Gilead moved for dismissal from further participation in these proceedings.  See Minute Entry (Dkt. # 41).  None of the

ORDER – 14

Defendants object to Gilead's request. Id. Having concluded that Gilead properly brought this interpleader action and has deposited the interpleader funds with the clerk of the court, the court dismisses Gilead from this matter. Accordingly, the court discharges Gilead from liability for, or in connection with, the interpleader funds.

A remaining issue, however, is whether Gilead may recover attorneys' fees and costs from the interpleader funds. See Am. Compl. at 6 (requesting attorneys' fees and costs incurred in this matter). In an interpleader action, the court has discretion to award attorneys' fees and costs to the disinterested stakeholder when it is fair and equitable to do so. Gelfen v. Republic Nat'l Life Ins. Co., 680 F.2d 79, 81 (9th Cir. 1982). The Ninth Circuit has held, however, that the "existence of prior federal tax liens gives the government a statutory priority over the interpleader plaintiff's ability to diminish the fund by an award of fees." Abex Corp. v. Ski's Enterprises, Inc., 748 F.2d 513, 516 (9th Cir. 1984) (citation omitted).

In light of Gilead's position as a disinterested stakeholder, the court finds that Gilead is entitled to be made whole by recovering the costs of bringing this action.[8] Because the United States has established that it has a tax lien against the interpleader funds, Gilead cannot recover attorneys' fees or costs from the portion of the interpleader funds encumbered by the tax lien. The court likewise concludes, based on the interests of equity, that Gilead's recovery should not deplete Syferd's claim. Thus, Gilead's recovery of attorneys' fees and costs, if any, will run against the remainder of funds to which Bio-Genetic is entitled. Should Gilead seek compensation for costs incurred in this matter,

---

[8] The Ninth Circuit has observed that the award of attorneys' fees to a disinterested stakeholder is typically "modest." Trustees of the Dir.'s Guild of America-Producer Pension Benefits Plans v. Tise, 234 F.3d 415, 426-27 (9th Cir. 2000) (noting that scope of compensable expenses is limited to preparation of the complaint, obtaining service of process on the claimants to the fund, and preparing an order discharging the plaintiff from liability and dismissing it from the action).

ORDER – 15

the court directs Gilead to file its request as set forth below. Defendants shall bear their own attorneys' fees and costs incurred in this matter.

## IV.  CONCLUSION

The court GRANTS Syferd's motion for summary judgment (Dkt. # 23). Syferd has established that it is entitled to $309,430.34 of the stake.

The court GRANTS the United States' motion for summary judgment (Dkt. # 52), and DENIES as moot its nunc pro tunc motion for leave to file an opposition (Dkt. # 64). The United States is entitled to apply the interpleader funds to Bio-Genetic's outstanding tax liabilities. The court directs the United States, within seven (7) days of the date of this order, to submit a motion for a proposed order, noted for the same day it is filed. The motion should state Bio-Genetic's total tax liability as of the date of this order, including the principal amount, penalties, interest, and the basis for such a request. If the United States fails to provide justification, the court will exclude the award of interest and penalties.

The court GRANTS Gilead's request for dismissal from further participation in these proceedings, except to the extent that Gilead seeks attorneys' fees and costs. In the event of such a request, the court directs Gilead, within seven (7) days of the date of this order, to submit a motion for a proposed order, noted for the same day it is filed. The motion should state the basis for attorneys' fees and costs and must include a declaration or affidavit from counsel supporting the request.

The court DENIES the motion for summary judgment from Bio-Genetic and BGV (Dkt. # 45). Any funds remaining in the stake after distribution to Syferd, the United States, and Gilead for allowable attorneys' fees and costs, shall be distributed to Bio-Genetic.

ORDER – 16

Following the court's consideration of proposed orders from the United States and Gilead, the court will enter a final order and judgment directing the clerk to distribute the funds accordingly.

Dated this 29th day of August, 2007

JAMES L. ROBART
United States District Judge

ORDER – 17